OPINION OF THE COURT
David Gerald Jay, J.
" 'Will you walk into my parlor?’ said the spider to the fly;
" 'Tis the prettiest little parlor that ever you did spy.’ ” (Howitt, The Spider and the Fly.)
*348 The facts elicited at trial are basically uncontested. Kellmark attracts the attention of members of the public to its business mainly by telephone solicitation. Once a prospect has been identified, a solicitor maintains contact until the prospect either shows no interest or an appointment is made to visit the club premises. Detailed records of all calls are made by the solicitor, fueled by the knowledge that an $80 commission hangs in the balance. Once the prospect has been "invited” to the club premises, he or she is oriented to the club’s purpose, which is to make available to the "member”, many and varied catalogs from which the member can select items for future purchase. The club offers these items at specially discounted member’s prices, with claims of savings from ordinary retail prices. Only members can make such purchases and participate in such savings.
The prospect is then advised as to the manner in which he or she can attain club membership: a two-year membership is offered for $1,160; an option to renew for eight more years at $95 per year is offered for $30. The hesitant prospect is advised that this is a once in a lifetime offer. The prospect cannot take the proffered contract home to think it over. The decision must be made then and there.
Once the member has been signed up, the catalogues of the club are then made available for the member’s selections. There are, however, a few obstacles to member satisfaction: (1) no dues are refundable, even upon the member’s death; (2) the membership cannot be assigned to another person for any reason, even in the event the member is transferred to another locality; (3) merchandise cannot be returned, once accepted; and (4) orders cannot be canceled, even if the merchandise has not been shipped.
In bold type the member is advised: "members are warned NOT TO ACCEPT MERCHANDISE AND SIGN FOR IT UNTIL AFTER THEY HAVE CAREFULLY EXAMINED SAME TO MAKE SURE THE MERCHANDISE CONFORMS TO THE ORDER, AND THAT THE CONDITION OF THE ITEM IS ACCEPTABLE TO THEM, SINCE THE CLUB WILL NOT BE RESPONSIBLE FOR MERCHANDISE ONCE ACCEPTED BY MEMBERS, AND MERCHANDISE MAY NOT BE RETURNED.”
One wonders how a member can inspect the contents of a parcel before its delivery. The court cannot imagine a commercially reasonable way that a delivery service would allow such predelivery inspection.
The member must abide by the warranties of the supplier *349 and has no recourse to the club whatsoever. On the other hand, the member is also advised that contact with the suppliers of merchandise is forbidden. Further, "the Club’s, low price [will not] be disclosed to retailers,” on pain of ejection from the club.
In this case, it was established that the buyers were contacted by the club and made an appointment to visit on a Saturday. After the usual tour of the club premises, representatives of the club sold them a membership for two years at a cost of $1,100. On Monday, after suffering buyers’ remorse, they attempted to cancel the membership only to be advised that they could not.
At trial buyers attempted to rely upon the Door-To-Door Sales Protection Act (Personal Property Law §§ 425-431), which gives a buyer three business days to cancel the types of sales covered under the act. They can find no safe harbor there as the sale in question was made at the business premises of the seller. (Personal Property Law § 426 [1].)
Buyers may recover, however, since this club membership is nothing more than a cleverly disguished method of selling nothing but hopes and dreams. How much merchandise must be purchased at the club’s "low prices” before the member gets his money’s worth for the two-year membership fee? The court suggests that the answer to that question is: too much. And with that answer, the inescapable legal conclusion is that the contract is grossly unconscionable.
"The law is beginning to fight back against those who once took advantage of the poor and illiterate without risk of either exposure or interference. From the common-law doctrine of intrinsic fraud we have, over the years, developed common and statutory law which tells not only the buyer but also the seller to beware. This body of laws recognizes the importance of a free enterprise system but at the same time will provide the legal armor to protect and safeguard the prospective victim from the harshness of an unconscionable contract.” (Jones v Star Credit Corp., 59 Misc 2d 189, 191 [Sup Ct 1969, Wachtler, J.].)
The obvious argument made here by the club is that since the members are neither poor nor illiterate, they should not be able to avoid the contract. The evidence clearly reflects that the members own their own home and earn upwards of $50,000 per annum. They are hardly illiterate. However, the fact that masterful salesmanship caused the bargain to be *350 struck in the first place and the fact that the bargain is so one-sided, leads the court to the inescapable conclusion of unconscionability. (UCC 2-302; see, e.g., Bogatz v Case Catering Corp., 86 Misc 2d 1052 [Civ Ct 1976]; Nu Dimensions Figure Salons v Becerra, 73 Misc 2d 140 [Civ Ct 1973].)
The counterclaim of Kellmark Corp. for the balance of the purchase price is dismissed and the claim for return of the deposit is granted. Judgment for Niemic and Polek against Kellmark Corp. in the sum of $90.